TUCKER (PULLING v.). See Case No. 11,-464.

## Case No. 14,226.

### TUCKER et al. v. SLACK.

[Holmes, 485;[1] 19 Int. Rev. Rec. 149.]

Circuit Court, D. Massachusetts. March 26, 1875.[2]

INTERNAL REVENUE — WHOLESALE DEALERS— "PLACE OF BUSINESS."

1. The selling agents of a manufacturing company, who sell all the company's goods at their place of business or that of their sub-agents, on behalf of the company, by samples only, the goods being delivered to purchasers direct from the company's factory, and the proceeds, if received by the agents, paid over to the company, are not liable to a special tax on such sales as wholesale-dealers, under the act of June 30, 1864. as amended by the act of July 13, 1866 (14 Stat. 98).

2. The term "place of business" in section 9 of the act of July 13, 1866 (14 Stat. 113), exempting from special tax, sales by manufacturers of their own goods, wares, and merchandise, "at their principal office or place of business," if the goods, wares, or merchandise, are kept there only as samples, means the principal place of business for the sale of the goods, wares, or merchandise.

Action [by William W. Tucker and others] against [Charles W. Slack] the defendant, collector of United States internal revenue, to recover duties assessed upon the plaintiffs, and paid by them under protest.

Henry D. Hyde and Hillard & Dickinson, for plaintiffs.

George P. Sanger, for defendant.

LOWELL, District Judge. This case was tried before us without a jury, and we find the facts to be as follows: The plaintiffs were the selling agents of four manufacturing companies, and sold all the goods for those companies, either by themselves at Boston, by the house in New York, or by their sub-agents in Philadelphia. All the sales passed through the books of the Boston house, and their place of business was the principal one for sales. They kept no separate bank-accounts for the different companies, but deposited the cash to their own credit, paying over from time to time as requested, and making a full settlement monthly. But separate sets of books were kept for each company, through which every sale could be distinctly identified; and when the payments were made in the notes of their customers, they were made either to the order of the treasurer, whose goods they represented, or, if the customer preferred it, to his own order, and were in all cases handed over to the treasurer. Notes were never made to the order of the plaintiffs; nor were sales ever guaranteed by them. Their agency was known to all their customers.

The plaintiffs kept only samples at their place of business, and the goods sold were

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]
[2] [Reversed in 23 Wall. (90 U. S.) 321.]

delivered from the factory of the company on the plaintiffs' order. Goods occasionally found their way to the plaintiffs' place of business, but only when they had been missent, or for some other reason had not been accepted by a customer.

Each of the companies for which the plaintiffs were selling agents had an office or counting-room separate from that of the plaintiffs', and in a different part of the city of Boston, at which the treasurer of the company transacted all the financial business. The treasurer was the superior officer, and was the person to whom the plaintiffs rendered their accounts, and from whom they were bound to take instructions.

The plaintiffs were assessed, monthly, as wholesale dealers, for the excess of their sales above $50,000, under the statute of June 30, 1864, as amended by the statute of July 13, 1866 (14 Stat. 115), and paid, under protest, the several sums sought to be recovered in this action. Appeal was taken from the assessment, and was decided by the secretary of the treasury against the plaintiffs.

Upon this state of facts we decide that the plaintiffs are entitled to recover the several sums demanded by them, for the following reasons: The sales were made by the plaintiffs as agents of the several manufacturing corporations, and were made in such a mode and under such circumstances that it is clear an action could have been maintained by or against the several corporations directly upon the contract of sale. They were sales for a disclosed domestic principal, and were made by samples; the agents not having, so far as appears, any possession or any special property whatever in the goods. That they were the sales of the companies is further shown by the well-known and proper course of the officers of the revenue in assessing all these sales as the sales of the manufacturers. No question was made that the companies had returned all these sales, and paid the much more considerable tax upon them of five per cent ad valorem, so long as that tax remained assessable by law.

The statute declares that nothing contained in it shall require a special tax for the sale by manufacturers of their own goods, wares, and merchandise, at the place of production or manufacture, and at their principal office or place of business provided no goods, wares, or merchandise, shall be kept, except as samples, at said office or place of business. Section 74, as amended, 14 Stat. 113.

It was argued that the office of the treasurer was the principal office of the company; and this appears to be so, if the statute refers to the office where the highest officer of the company transacted business; but our opinion is, that, whatever the meaning of the word "office," "place of business" in this section means the principal place for sales of goods. This is the subject-matter of the section. It was of no importance to the government whether the treasurer of the company had an office in the same building with the selling agent, or that the course of affairs might require different places for different parts of the company's business; what they were legislating about was the special tax on manufacturers, and they intended that the payment of the special tax by manufacturers should authorize them to make sales at their factory, and at one other and principal place of selling, whether the office or not.

This view of the case is confirmed by the provisions of section 82 of the principal act, a section which was not changed by the act of 1866, and which requires all manufacturers to furnish to the assistant-assessor a statement, subscribed and sworn to, or affirmed, setting forth the place where the manufacture is to be carried on, and the principal place of business for sales, the name of the manufactured article, &c. 13 Stat. 258. One purpose of this return was to enable the assessor to check the monthly accounts of sales, on which the large duty of five per cent was payable; but it was a part of the purpose, in all probability, to obtain a definite statement of the place of business at which the manufacturer considered himself entitled to sell under the seventy-fourth section, as his principal place, without further payment of a special tax.

We see very little reason to doubt that the words "office" and "place of business" are used disjunctively, and that a manufacturer might elect at which of them he would sell; and in this connection it may be noted that the seventy-fourth section, as it stood in the act of 1864, was in this form: "Nothing herein contained shall prohibit the storage of goods, wares, or merchandise in other places than the place of business, nor the sale by manufacturers or producers of their own goods, wares, or merchandise, at the place of production or manufacture, or at their principal office or place of business, provided no goods, wares, or merchandise shall be kept for sale at such office." 13 Stat. 249. As amended, the section reads, as we have seen, that nothing shall be held to require a special tax of manufacturers selling at their factory, and at their principal office or place of business, provided no goods shall be kept, except as samples, at such office or place of business. We do not mean to say that the meaning is different, but it is much more clearly expressed, in the amended form, that manufacturers may sell at two places, if they please: namely, the factory, and at their principal office or place of business; but at that office or place of business, whichever it be called or whichever it in fact be, they must sell by sample.

If this interpretation be wrong, the law is not uniform, because the liability to this additional tax would depend on accidental circumstances, such as whether the manufacturer kept his accounts and transacted his financial business in one place or another. It would often be very difficult to say which

was the principal place of business, if we are to compare the importance of different parts of the business. We know of no reason why selling is not as important an object with manufacturers as any other part of their business. But if the license is to sell at the factory, and at one other principal place of business used for that purpose, there is no difficulty.

For these reasons, we are of opinion that neither the manufacturing companies, nor their agents the plaintiffs, were liable to pay a special tax as wholesale dealers, in respect to these sales.

Judgment for plaintiffs.

[This case was taken by writ of error to the supreme court, which reversed the judgment above, with directions to award a venire de novo. 23 Wall. (90 U. S.) 321.]